# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DEBRA PRESCOTT, in Her Own Right and as Executor of the Estate of RONALD STANLEY PRESCOTT,<br>　　　　Plaintiff,<br><br>vs.<br><br>LIVANOVA PLC, SORIN GROUP DEUTSCHLAND GMBH, and SORIN GROUP USA, INC.,<br>　　　　Defendants. | No. 4:16-cv-00472-JAJ<br><br>**ORDER** |
| ROBIN CRAWFORD, in Her Own Right and as Administrator of the Estate of GARY CRAWFORD,<br>　　　　Plaintiff,<br><br>vs.<br><br>LIVANOVA PLC, SORIN GROUP DEUTSCHLAND GMBH, and SORIN GROUP USA, INC.,<br>　　　　Defendants. | No. 3:16-cv-00103-JAJ<br><br>**ORDER** |

This matter comes before the Court pursuant to Defendant LivaNova PLC's Motion to Dismiss for Lack of Personal Jurisdiction in two actions: a suit brought by Plaintiff Debra Prescott (4:16-cv-00472) and a suit brought by Plaintiff Robin Crawford (3:16-cv-00103). [Dkt. Nos. 16, 23 respectively] On May 8, 2017, pursuant to Federal Rule of Civil Procedure 42(a), the Court granted the parties' Joint Unopposed Motion to Consolidate Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. [Dkt. No. 29, Crawford case] Defendant LivaNova filed its motion on October 17, 2016. [Dkt. No. 16, Prescott case] Prescott responded in opposition on November 3, 2016. [Dkt. No. 18] LivaNova replied on November 16, 2016. [Dkt. No. 23] The parties conducted jurisdictional discovery. Prescott filed a final brief in opposition to the motion on April 7, 2017, and LivaNova filed a final brief in support of the motion on April 14, 2017. [Dkt. Nos.

52, 54] For the reasons that follow, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff Debra Prescott is a citizen of Iowa and the widow of Ronald Stanley Prescott. She is the Executor of his estate. Ronald Prescott died on May 14, 2016 from a rare non-tuberculous mycobacterium ("NTM") bacterial infection. He claims to have been infected in October 2012 during an open heart surgery at the University of Iowa Hospitals and Clinics ("UIHC") in Iowa City. During his surgery, UIHC used a contaminated Sorin 3T Heater-Cooler System ("3T System") that had been manufactured before September 2014. Ronald Prescott was not the only person claiming to be damaged by the use of contaminated 3T Systems at UIHC and Mercy Medical Center in Des Moines: approximately 4,100 Iowans were exposed and five Iowans contracted NTM infections. On August 22, 2016, Debra Prescott filed suit against three corporate entities: LivaNova PLC ("LivaNova"), Sorin Group USA ("Sorin USA"), and Sorin Group Deutschland GmbH ("Sorin Group Deutschland").

### A.   LivaNova PLC, Sorin Group USA, and Sorin Group Deutschland GmbH

In February 2015, LivaNova was organized under the laws of England and Wales as a public limited company headquartered in London, United Kingdom. LivaNova had one purpose: to facilitate the "business combination" of Cyberonics, Inc. ("Cyberonics")[1], a Delaware corporation, and Sorin S.p.A., an Italian joint stock company. Prior to the formation of LivaNova, Sorin S.p.A. existed as a holding company for two medical technology firms: Sorin Group USA and Sorin Group Deutschland GmbH. In October 2015, LivaNova superseded Sorin S.p.A. and began serving as a holding company for the combined businesses of Cyberonics and Sorin S.p.A., involved in the fields of cardiac surgery, neuromodulation, and cardiac rhythm management. As wholly-owned subsidiaries of Sorin S.p.A., Sorin Group USA and Sorin Group Deutschland GmbH became wholly-owned subsidiaries of LivaNova. Their legal status was otherwise unaffected by the merger.

Sorin Group USA is incorporated in Delaware with its principal place of business in Arvada, Colorado. Sorin Group USA markets and sells heart valves and cardiopulmonary products to customers throughout the United States, including Iowa. It is undisputed that Sorin Group USA sold the 3T System at issue to UIHC and that this Court has personal jurisdiction over the

---

[1] Cyberonics is not a party to this action.

corporation. Sorin Group Deutschland GmbH is headquartered in Munich, Germany, and is the initial designer and manufacturer of the 3T System at issue here. It was the applicant for the FDA medical device approval for the 3T System. It is also undisputed that this Court has personal jurisdiction over that corporation.

### B. LivaNova's Motion to Dismiss for Lack of Personal Jurisdiction

On October 17, 2016, LivaNova filed the instant motion to dismiss, arguing that this Court lacks personal jurisdiction over it pursuant to Federal Rule of Civil Procedure 12(b)(2). [Dkt. No. 16] In both its initial and final briefs in support of its motion, LivaNova argues: (1) it lacks the necessary minimum contacts to establish general or specific personal jurisdiction in Iowa based on its own activities; and (2) personal jurisdiction in Iowa cannot be established based on the subsidiaries' activities. [Dkt. Nos. 16-1, 54] LivaNova also directs the Court to two district court rulings involving nearly identical factual and procedural situations. *See Baker et al. v. LivaNova PLC*, 210 F.Supp.3d 642 (M.D. Penn. 2016); *see also WARAD West, LLC v. Sorin CRM USA, Inc.*, 119 F.Supp. 3d 1294 (D. Colo. 2015). In both cases, the courts held that they did not have personal jurisdiction.

In the Complaint, Prescott argues that personal jurisdiction exists over LivaNova "due to the general and specific contacts they maintain in the U.S." [Dkt. No. 1, ¶ 2 (alleging contacts in the United States rather than in Iowa)] In her initial brief in opposition to the motion to dismiss, Prescott argues that LivaNova purposefully availed itself of the benefits and burdens of doing business in Iowa by selling at least six 3T Systems in the state and that, under Iowa law, the sale of even one defective product that causes injury in the state satisfies the stream of commerce test for personal jurisdiction. [Dkt. No. 18, p.1] In her final brief in opposition to the motion, Prescott further alleges: (1) LivaNova has substantial contacts with the American market, including communication from the FDA; (2) there is overlap between employees at LivaNova and its wholly-owned subsidiaries; (3) that customers, including those in Iowa, were instructed that LivaNova was taking responsibility for and control over the product defects as identified by the FDA; (4) that LivaNova contributes to Iowa charities to further its business relationships; and (5) that the three sued entities are "one in the same," operating as "alter egos" of LivaNova with a "synergistic relationship" as a single, global medical device company. [Dkt. No. 52] Prescott argues that the appropriate test for personal jurisdiction is the stream of commerce test articulated in *World-Wide Volkswagen Corporation*, as reaffirmed by the Iowa Supreme Court in *Book v. Voma Tire*

*Corporation.*[2] *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Book v. Voma Tire Corp.*, 860 N.W.2d 576, 598 (Iowa 2015). Prescott further argues that the Court has specific personal jurisdiction over LivaNova because Sorin Group USA and Sorin Group Deutschland GmbH have a "synergistic relationship" with and are "alter egos" of LivaNova. *See Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir. 2004); *In re Genetically Modified Rice Litig.*, 576 F.Supp.2d 1063, 1074 (E.D. Mo. 2008).

### C. Related Litigation

The allegedly contaminated 3T System at issue here was sold throughout the United States and has given rise to litigation in multiple districts. *See In re: Sorin 3T Heater-Cooler System Products Liability Litigation*, United States Judicial Panel on Multidistrict Litigation, MDL No. 2772 (April 5, 2017) (noting at least 15 cases pending nationwide and denying centralization since individual issues of fact and law predominate). On September 29, 2016, Judge John E. Jones III of the Middle District of Pennsylvania granted a nearly identical motion to dismiss for lack of personal jurisdiction. *Baker*, 210 F.Supp.3d at 649–51. LivaNova made the same arguments in *Baker* as are presented in the motion before this Court. *Id.* at 646 (noting that LivaNova does not share employees, participate in or instruct the day-to-day marketing, sales, or business operations of its subsidiaries, and explaining that the companies all share the common brand of "LivaNova" for their logos and email domains). Baker attempted to refute LivaNova's arguments by the same means as has Prescott. *Id.* at 647 (pointing to aspects of the common branding as "LivaNova," allegedly overlapping employees, communication with the FDA on branded letterhead, and appearances at an industry panel). Baker also argued that the court could establish personal jurisdiction by applying the stream of commerce test as described in *World-Wide Volkswagen*. *See id.* at 651. The court was unpersuaded by Baker's arguments and found that it lacked personal jurisdiction over Liva Nova. *Id.*

---

[2] In *Book*, the defendant had a high level of systematic and intentional contacts with the forum state.

> First, we hold Doublestar has the requisite minimum contacts with Iowa. In 2008–09, Doublestar shipped 12,681 tires directly to Des Moines, Iowa, for Voma. Doublestar's employees knew from the shipping documents these tires were going to "Des Moines, IA" . . . . Moreover, indirect shipments count. Voma shipped the accident tire and another 998 tires of the same model from Tennessee to Iowa for sale in this forum. Doublestar sold 180,000 tires to Voma for the U.S. market, and Voma shipped 16,700 of those tires to Holt for sale in Iowa.

*Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 596 (Iowa 2015).

First, the court in *Baker* held that:

> The evidence submitted by Plaintiffs in an attempt to establish personal jurisdiction over LivaNova PLC based on its contacts with Pennsylvania falls extremely short of the minimum contacts required for due process. LivaNova PLC, in contrast, has provided evidence in the form of the Pollock and Sheridan declarations to make clear that LivaNova PLC is simply a holding company for [the subsidiaries], and had no role in the marketing or sale of the 3T Systems at issue here. Therefore, the Court cannot exercise specific personal jurisdiction over LivaNova PLC based on its own contacts with Pennsylvania.

*Baker*, 210 F.Supp.3d at 649. Second, the court applied the relevant Third Circuit test and ten-factor Middle District of Pennsylvania framework, finding that "Plaintiffs' alter ego analysis boils down to the ownership of the subsidiaries and the common branding between the parties. These two factors alone cannot sustain an alter ego argument." *Id*. at 650.

> It is undisputed that LivaNova PLC owns all the stock of Sorin and Sorin USA, and that all three companies operate under the united image of "LivaNova," but this evidence alone is insufficient to establish alter-ego jurisdiction. Because LivaNova PLC has shown through the declarations of Sheridan and Pollock that it does not control or otherwise contribute to the manufacturing, marketing, or selling functions of Sorin or Sorin USA, there is no alter ego relationship.

*Id*. at 651. Finally, the court stated:

> Plaintiffs['] . . . [*World-Wide Volkswagen*] argument simply states the law that personal jurisdiction is appropriate where a defective product is in the forum state through "the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product" in that state. *World–Wide Volkswagen*, 444 U.S. at 297. No one disputes this standard: it is Supreme Court precedent and binding upon all courts. However, Plaintiffs have failed to show how this applies to LivaNova PLC. Plaintiffs provide no evidence to illustrate that LivaNova PLC is akin to a distributor who has targeted the Pennsylvania market. Wholly conclusory arguments do not provide a basis for personal jurisdiction.

*Id*.

Prior to the creation of LivaNova, when Sorin S.p.A. was acting as the holding company for Sorin USA and Sorin Deustchland GmbH, it successfully defeated personal jurisdiction based on the alter ego theory as advanced by a plaintiff in the District of Colorado. *West*, 119 F.Supp. 3d at 1299–1300. The plaintiff in *West* made similar claims to those made here against LivaNova predecessor Sorin S.p.A.: that the wholly-owned subsidiaries shared directors, officers, employees, and facilities with the parent corporation, and did not observe formal legal requirements as should

5

be done by an independent corporation. *Id*. at 1299. Additionally, the plaintiff argued that one of the subsidiaries was undercapitalized and reliant on other companies in the structure for financing. *Id*. The court applied the Tenth Circuit test, looking to "facts concerning the amount of control exercised by the corporate parent over its subsidiary" to ascertain "whether the subsidiary is doing the business of the parent." *Id*. at 1298 (internal quotation marks and citations omitted). The court granted Sorin S.p.A.'s motion to dismiss, holding:

> Considering all of the foregoing, the Court finds that [Plaintiff] has failed to state a prima facie case sufficient for personal jurisdiction over the Italian Entities on an alter ego theory. Whereas most of [Plaintiff's] accusations are conclusory (although largely uncontradicted), [Defendant's affiant] provides a wealth of context and detail gleaned from his personal knowledge, and all of it suggests that Sorin CRM and Sorin USA operate with sufficient independence from the Italian Entities.

*Id*. at 1300.

## II. LEGAL STANDARD: FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). Once a defendant does so, the plaintiff has the burden of alleging and proving sufficient facts "to support a reasonable inference that [defendant] may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008); *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists" through the pleadings, affidavits, and exhibits. *Fastpath, Inc., v. Arbela Technologies Corp.*, 760 F.3d 816, 819–20 (8th Cir. 2014) (citing *Dever*, 380 F.3d at 1072–73). Jurisdiction need not be proven by a preponderance of the evidence until trial or evidentiary hearing. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (citation omitted). "'A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state[3] and by the Due Process Clause.'" *Dever*, 380 F.3d at 1073 (quoting *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280 (8th Cir. 1991)).

The Due Process Clause requires that a defendant has sufficient "minimum contacts" with the forum state such that summoning the defendant to the forum state would not offend "traditional notions of fair play and substantial justice." *Id*. at 1073 (quoting *Int'l Shoe Co. v. Washington*, 326

---

[3] "Iowa's long-arm statute 'expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution.'" *Hammond v. Florida Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005)); IOWA R. CIV. P. 1.306.

U.S. 310, 316 (1945) (focusing on the "quality and nature" of the defendant's contacts with the forum state)). Under *World-Wide Volkswagen*, "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297–98 (1980). However, the sale of the product must "arise[] from the efforts of the manufacturer or distributor" to serve the market in the forum state. *Id.* at 297; *see also Daimler AG v. Bauman*, 134 S.Ct. 746, 768 n.7 (2014) (describing instances where jurisdiction may lie despite an attenuated corporate defendant)). Personal jurisdiction is not established when the corporate head of a distribution network merely places its products into the stream of commerce in a forum state:

> Our precedent and the Supreme Court's decision in *Goodyear* make clear that even if a foreign corporation pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area this connection alone is so limited that it is an inadequate basis for the exercise of general jurisdiction.

*World-Wide Volkswagen*, 444 U.S. at 597–98 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 920 (2011)) (internal quotation marks and citations omitted). The Supreme Court has recognized two types of personal jurisdiction: specific and general. *Daimler*, 134 S.Ct. at 758 ("As is evident from *Perkins*, *Helicopteros*, and *Goodyear*, general and specific jurisdiction have followed markedly different trajectories post-*International Shoe*.")

### A. General and Specific Personal Jurisdiction

General jurisdiction describes to a court's power "to hear any and all claims against" a party without regard to where the event took place. *See Goodyear Dunlop Tires* Operations, 564 U.S. at 919. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* In *Daimler*, the Supreme Court emphasized that sufficient contacts will make the foreign corporation "comparable to a domestic enterprise in that State." *Daimler*, 134 S.Ct. at 758 n.11. General jurisdiction is usually afforded only to defendants that are incorporated or have their principle place of business in the forum state. *See id.* at 756 n.8, 761–62 n.19. "A corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amendable to suits unrelated to that activity.'" (*Goodyear*, 564 U.S. at 927–28 (quoting *Int'l*

*Shoe*, 326 U.S. at 318) (noting that putting a product into the stream of commerce in the forum state may bolster a claim of *specific* jurisdiction, not general)). These requirements are identical to the federal due process requirement. *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 707 (8th Cir. 2003) (citing *Int'l Shoe*, 326 U.S. at 318; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445 (1952)).

"Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In such a case, the "'relationship among the defendant, the forum, and the litigation'" is the essential foundation of specific jurisdiction. *Helicopteros*, 466 U.S. at 414 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). The defendant must have "sufficient minimum contacts" that "also give rise to the liabilities sued on." *Daimler*, 134 S.Ct. at 754 (quoting *Int'l Shoe*, 326 U.S. at 317)). Further, "a defendant must . . . purposefully avail itself of the benefits and protections of the forum to anticipate reasonably being haled into court there." *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014) (quoting *Burger King*, 471 U.S. at 462)). "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party[.]" *Stanton v. St. Jude Med., Inc.*, 340 F.2d 690, 693–94 (8th Cir. 2003). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Id.* (quoting *Stanton*, 340 F.2d at 693–94).

The Eighth Circuit Court of Appeals explained sufficient minimum contacts as follows:

> We have set a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts within the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Factors one through three are primary. With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction. Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.

*Coen v. Coen*, 509 F.3d 900, 902 (8th Cir. 2007) (citations and internal quotation marks omitted).

Even if a court finds that a defendant has sufficient minimum contacts with a forum state, it may still refuse to exercise jurisdiction if such action would offend traditional notions of fair play and substantial justice. *See World-Wide Volkswagen*, 444 U.S. at 292.

### B. Corporate Subsidiaries, Minimum Contacts, and Piercing the Corporate Veil

Under certain circumstances, due process allows that personal jurisdiction over a corporate parent may be established using the contacts of subsidiary. *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 649 (8th Cir. 2003). There is not a bright-line rule as to when the application of this "alter ego" jurisdiction is appropriate because each case "involves applying principles of fairness and reasonableness to a distinct set of facts, and the determination is not readily amenable to rigid rules that can be applied across the entire spectrum of cases." *Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir. 2004). It is, however, well-settled that a parent corporation is "'not doing business in a state merely by the presence of its wholly-owned subsidiary.'" *Epps*, 327 F.3d at 649 (quoting *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Management, Inc.*, 519 F.2d 634, 637 (8th Cir.1975)). "Appropriate subsidiary involvement for a parent can include monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures." *In re Genetically Modified Rice Litigation*, 576 F.Supp.2d 1063, 1072 (E.D. Mo. 2008). "Where a subsidiary's 'affairs are so conducted that it is in fact a mere instrumentality or adjunct of another corporation,' jurisdiction over the parent may be proper." *Id.* (quoting *Epps*, 327 F.3d at 649).

Outside the Eighth Circuit, courts of appeal follow a number of different approaches when evaluating claims of personal jurisdiction that rest on imputing the contacts of one corporation to another. "In [the Fifth] Circuit, it is established that so long as a parent and a subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 774 n.18 (5th Cir.1988). More commonly, courts allow that "a corporate parent may subject itself to jurisdiction either as an alter-ego of the subsidiary, or by having the subsidiary act as its agent." *In re Genetically Modified Rice Litigation*, 576 F.Supp.2d at 1073 (citing *Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir.2001); *Bellomo v. Penn. Life Co.*, 488 F.Supp. 744 (S.D.N.Y.1980)). In the Eighth Circuit,

> Our cases consistently have stated that "personal jurisdiction can be based on the activities of [a] nonresident corporation's in-state subsidiary . . . only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (quoting *Epps*, 327 F.3d at 648).

In this circuit, "a court's assertion of jurisdiction is contingent on the ability of the plaintiffs to pierce the corporate veil [and] [s]tate law is viewed to determine whether and how to pierce the corporate veil." *Epps*, 327 F.3d at 649 (applying state law to determine whether to pierce the corporate veil); *cf. Baker*, 210 F.Supp.3d at 650 (finding that, in the Third Circuit, a parent-subsidiary relationship presents insufficient justification to pierce the corporate veil in a jurisdictional context) *and West*, 119 F.Supp.3d at 1298 (holding that, in the Tenth Circuit, a complete veil-piercing analysis is unnecessary in a jurisdictional context). Piercing of the corporate veil is regarded as "a drastic approach authorized only in the most extreme situations." *Lakota Girl Scout*, 519 F.2d at 637 (quoting *Karlin v. Avis*, 326 F.Supp. 1325 (E.D.N.Y.1971)). In deciding whether to impute the contacts of one corporation to another, this circuit has consistently focused on upholding traditional principles of fairness based on the circumstances of each case. As such, the court explained in *Anderson* that if minimum contacts may be established without piercing the corporate veil, district courts may exercise jurisdiction without performing the veil-piercing analysis. *Anderson*, 361 F.3d at 452 ("In any event, this case is clearly distinguishable from *Epps*, because . . . piercing Dassault Falcon Jet's corporate veil is [not] required to establish the minimum contacts necessary for the exercise of personal jurisdiction in Arkansas.") In other words, if jurisdiction over the parent corporation may be established without imputing the contacts of the subsidiary, an inability to pierce the corporate veil is not a barrier to jurisdiction. In all other cases, an inability to pierce the corporate veil will prevent a court from exercising personal jurisdiction over the non-resident defendant. See *Schultz v. Portfolio Recovery Associates, LLC*, 2012 WL 5332194 at *5–6 (N.D. Iowa 2012) (quoting *Epps*, 327 F.3d at 649)).

The Iowa Supreme Court has held, "[a] court may disregard a corporate structure by piercing the corporate veil only under circumstances 'where the corporation is a mere shell, serving no legitimate business purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice.'" *Schultz*, 2012 WL 5332194 at *5 (N.D. Iowa 2012) (quoting *In re Marriage of Ballstaedt,* 606 N.W.2d 345, 349 (Iowa 2000) (quoting *C. Mac Chambers Co. v. Iowa Tae Kwon Do Acad., Inc.,* 412 N.W.2d 593, 597–98 (Iowa 1987))). "In the parent-subsidiary context, [Iowa courts] have stated the corporate entity should be disregarded where doing so would prevent the parent from perpetuating a fraud or injustice, evading just responsibility or defeating public convenience." *Briggs Transp. Co. v. Starr Sales Co.,* 262 N.W.2d 805, 810 (Iowa 1978)). Iowa courts consider the following factors in determining whether to pierce the corporate veil:

>whether (1) the corporation is undercapitalized, (2) the corporation lacks separate books, (3) its finances are not kept separate from individual finances, or individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed, or (6) the corporation is a mere sham.

*Schultz,* at *5 *(*quoting *Briggs Transp. Co.,* 262 N.W.2d at 810 (citing *Lakota Girl Scout Council, Inc. v. Harvey Fund-Raising Management, Inc.,* 519 F.2d 634, 638 (8th Cir. 1975)).

### III.    ANALYSIS

The Court holds that it cannot exercise personal jurisdiction over LivaNova under any theory.

First, LivaNova does not, on its own, have sufficient minimum contacts with the state of Iowa such that the Court's exercise of personal jurisdiction over it would comport with due process.[4] The Eighth Circuit Court of Appeals has set a five-part test for measuring minimum contacts with the forum state, with the first three factors having greatest weight. First, the Court examines the nature and quality of the contacts within the forum state. Second, the Court looks to the quantity of those contacts. Here, the contacts described fall far below the minimum nature, quality, and quantity of contacts required: the communication from the FDA does not indicate a connection to Iowa, general contacts with the U.S. market are irrelevant to establishing personal jurisdiction in Iowa, and the single charitable contribution was made under "LivaNova" branding used by all three corporations. Third, the Court analyzes the relation of the cause of action to the contacts, distinguishing between specific and general jurisdiction. Specific jurisdiction speaks to causes of action that arise out of or relate to a defendant's activities in the state, and it requires that a defendant has purposefully directed its activities at a state's residents. Here, there is no evidence that LivaNova, on its own, directed activities at Iowa residents or that it had direct undertakings in the state. [Dkt. No. 16-3, Decl. of Taylor Pollock] Instead, Sorin USA marketed, advertised, and distributed the 3T Systems in Iowa, purposefully availing itself of the state's laws in the process. *Id*. General jurisdiction relates to a whether a Court could exercise jurisdiction over a specific defendant—in this case, LivaNova is not registered to do business in Iowa, is not an Iowa corporation, and does not independently do business in Iowa. *Id*. The Court does not have general jurisdiction based on LivaNova's independent contacts with Iowa.

---

[4] In this, the Court agrees with the parallel analysis set forth by the Pennsylvania and Colorado district courts in *Baker* and *West*.

In conjunction with these first three factors, the Court notes that Prescott's stream of commerce argument fails. Under *World-Wide Volkswagen* and the Iowa Supreme Court's application of it in *Book*, the steam of commerce test requires both that a defendant is akin to a distributor and that it purposefully sells product into the forum state. Here, Sorin USA acted as the distributor of the 3T Systems; it marketed, advertised, and sold them. LivaNova's role was akin to that of an investor, not a distributor. Thus, the first three factors weigh against the exercise of jurisdiction. The final two factors are: (1) the interest of the forum state in providing a forum for its residents; and (2) the convenience of the parties. Here, even if LivaNova is dismissed, Iowa citizens involved will still be able to litigate their claim against the remaining parties in their home state. It is most convenient for the Iowans bringing the action to try the case at home, and it is undisputed that the remaining two parties are subject to the Court's jurisdiction. Denying personal jurisdiction over LivaNova will not inconvenience the parties.

Second, the Court holds that it may not pierce the corporate veil to further examine whether LivaNova and its subsidiaries are alter egos. Therefore, the Court cannot exercise personal jurisdiction over LivaNova based on an alter ego theory. Four of the six veil-piercing factors described by the Iowa Supreme Court are not in dispute: there are no allegations that the corporation is undercapitalized, not kept separate from individual finances or obligations, used to promote fraud or illegality, or a mere sham. That leaves two factors for analysis: (1) whether the corporations lack separate books; and (2) whether corporate formalities are not followed. In her final brief, Prescott seems to admit that corporate formalities are followed. She states that, "Even corporations that observe corporate formalities may be deemed alter egos when the relationship exceeds the bounds of a normal parent-subsidiary relationship," and does not specifically claim formalities are lacking. [Dkt. No. 52 (quoting *In re Genetically Modified Rice Litigation*, 576 F.Supp.2d at 1074)] Prescott also does not specifically allege that the corporations lack separate books, so the allegation, if it exists, would have to be imputed to the general allegations of the "synergistic relationship" between the three bodies. Insomuch as that allegation needs to be refuted, Taylor Pollock, Vice President of Legal Affairs at Sorin Group USA, describes in his Declaration the day-to-day operational separation between the three companies as well as the separate responsibility for financial business records of each company. [Dkt. No. 16-3 ¶¶ 22–25] Based on the above review of the factors described by the Iowa Supreme Court, this Court finds that there are insufficient grounds for piercing the corporate veil and disregarding the corporate

form. That defeats Prescott's argument that the subsidiaries are alter egos of LivaNova.

## IV.   CONCLUSION

Defendant LivaNova is not incorporated in Iowa and is not registered to do business in Iowa. Sorin USA markets, advertises and sells the allegedly defective 3T Systems at issue here, while Sorin Group Deutschland is the original designer and manufacturer of the product. LivaNova operates as a holding company for Sorin USA and Sorin Group Deutschland. The companies share a common branding scheme, including a common email domain, but maintain completely separate day-to-day operations, employees, officers, and corporate structures. LivaNova does not have sufficient minimum contacts with the state of Iowa such that this Court may exercise general personal jurisdiction over it. Further, based on the standard set forth by the Iowa Supreme Court, there is not cause for this Court to pierce the corporate veil and impute the subsidiaries' contacts to LivaNova. Finally, because it was the subsidiaries, not LivaNova, who distributed the product in Iowa and purposefully availed themselves of Iowa's laws, this Court cannot exercise specific personal jurisdiction over LivaNova. Defendant LivaNova's motion is **GRANTED**.

Upon the foregoing,

**IT IS ORDERED** that Defendant's Motion to Dismiss for Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is **GRANTED. IT IS FURTHER ORDERED** that defendant LivaNova, PLC is dismissed.

**DATED** this 12th day of June, 2017.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA